**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 6, 2020

*[signature]*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 6 2020

*[signature]*
SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PEACEHEALTH ST. JOSEPH MEDICAL CENTER AND PEACEHEALTH ST. JOHN MEDICAL CENTER, | ) ) ) | No. 97557-4 |
| | ) | |
| Petitioner, | ) | En Banc |
| v. | ) | |
| | ) | Filed___August 6, 2020_____ |
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE, | ) ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

OWENS, J. — RCW 82.04.4311 provides a business and occupation (B&O)

tax deduction to public and nonprofit hospitals on compensation they receive from

both Washington State and the federal government for health care services subsidized

under certain government-funded programs, such as Medicaid and Children's Health

Insurance Programs (CHIP). Petitioners PeaceHealth St. Joseph Medical Center and

PeaceHealth St. John Medical Center (PeaceHealth) argue that, under RCW

82.04.4311's plain language, qualifying Washington hospitals are entitled to a B&O

tax refund and deduction on compensation they receive from *any* state's CHIP or

Medicaid programs, not just Washington's. PeaceHealth alternatively argues that by excluding compensation that qualifying Washington hospitals receive from other states' CHIP and Medicaid programs, the department unlawfully penalizes those hospitals that serve out-of-state patients, thus violating the dormant Commerce Clause of the United States Constitution.

In holding that RCW 82.04.4311's deduction excludes compensation that qualifying hospitals receive from other states' CHIP and Medicaid programs, the Court of Appeals used the series-qualifier rule of statutory construction (in which a postpositive modifier normally applies to all nouns or verbs in a series when there is a straightforward, parallel construction) in lieu of the last antecedent rule (in which qualifying words or phrases modify only the immediately preceding words or phrases). We hold that the Court of Appeals properly applied the series-qualifier rule to delimit the scope of RCW 82.04.4311's deduction, thus we affirm the Court of Appeals' reasoning on this issue. Additionally, because we find that RCW 82.04.4311 supports a traditional government function without any differential treatment favoring local private entities over similar out-of-state interests, we hold that RCW 82.04.4311 is constitutional under the government function exemption to the dormant Commerce Clause.

FACTS

In 1980, the legislature enacted former RCW 82.04.4297, which created a B&O tax exemption for "amounts received from the United States" or "from the state of Washington . . . as compensation for, or to support, health or social welfare services rendered by a health or social welfare organization" (i.e., Medicaid). LAWS OF 1980, ch. 37, § 17. This original deduction was limited to compensation received from Washington State and the federal government and did not cover compensation received from other states' health care programs.[1] *See id*.

In subsequent years, the legislature observed that third-party-managed health care organizations had assumed an increasingly greater role in the provision and disbursement of covered benefits, leading to a decrease in direct payments from both the federal government and Washington to qualifying hospitals. *See* LAWS OF 2002, ch. 314, § 1. The legislature concluded that "the tax status of these amounts should not depend on whether the amounts are received directly from the qualifying program or through a managed health care organization under contract to manage benefits for a qualifying program." *Id.* Thus, the legislature amended RCW 82.04.4297 and created RCW 82.04.4311. *See id*. §§ 1-3. That revised statute, under which PeaceHealth brings this current action, now states that

---

[1] Nonprofit hospitals, like those managed by PeaceHealth, were exempt from paying any B&O taxes until 1993. LAWS OF 1993, ch. 492, § 305.

> [a] public . . . or a nonprofit hospital . . . may deduct from the measure of tax amounts received as compensation for health care services covered under the federal medicare program authorized under Title XVIII of the federal social security act; *medical assistance, children's health, or other program under chapter 74.09 RCW*; or for the state of Washington basic health plan under chapter 70.47 RCW.

RCW 82.04.4311 (emphasis added).

PeaceHealth applied for a refund from the Department of Revenue for the period of December 1, 2007, through December 31, 2008, seeking a deduction for all taxes paid on out-of-state Medicaid and CHIP revenue during this time period. PeaceHealth relies on the second clause of RCW 82.04.4311, which entitles qualifying hospitals to claim a B&O deduction on compensation received under "medical assistance, children's health, or other program under chapter 74.09 RCW."[2] The department denied PeaceHealth's request, reasoning that RCW 82.04.4311's deduction for compensation received from CHIP and Medicaid programs authorized "under chapter 74.09 RCW" necessarily excludes compensation received from other states' CHIP and Medicaid programs. PeaceHealth appealed the department's decision to the Board of Tax Appeals, and the board granted PeaceHealth's motion for summary judgment, holding that PeaceHealth was entitled to the deduction. The department petitioned for judicial review, and the superior court reversed the board's

---

[2] For purposes of this opinion, we recognize that RCW 82.04.4311's discussion of "medical assistance" and "children's health" programs are references to Medicaid and CHIP. *See* RCW 74.09.500, .470(1).

decision. The Court of Appeals affirmed, *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 9 Wn. App. 2d 775, 785, 449 P.3d 676 (2019), and PeaceHealth petitioned for review, which was granted. *PeaceHealth St. Joseph Med. Ctr. v. Dep't of Revenue*, 194 Wn.2d 1016 (2020).

## ANALYSIS

1. *RCW 82.04.4311's Deduction Does Not Extend to Compensation That Qualifying Hospitals Receive from Other States' Medicaid and CHIP programs*

The party seeking a tax deduction bears the burden of showing that it is entitled to the benefit sought, and any doubt or ambiguity as to the availability of a statutory benefit is "to be construed strictly, though fairly and in keeping with the ordinary meaning of [the statute's] language, against the taxpayer." *Group Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967).

We review questions of statutory interpretation de novo and interpret statutes so as to give effect to the legislature's intentions. *State v. Bunker*, 169 Wn.2d 571, 577-78, 238 P.3d 487 (2010). We derive legislative intent solely from the plain language of the statute, considering the text of the provision, the context of the statute, related provisions, amendments, and the statutory scheme as a whole. *First Student, Inc. v. Dep't of Revenue*, 194 Wn.2d 707, 710, 451 P.3d 1094 (2019) (citing *Cashmere Valley Bank v. Dep't of Revenue,* 181 Wn.2d 622, 631, 334 P.3d 1100 (2014)). We regularly employ traditional rules of grammar when discerning a

statute's plain language. *Bunker*, 169 Wn.2d at 578. When a statute's plain language is unambiguous, meaning it is subject to only one reasonable interpretation, our inquiry ends, and we will not resort to interpretive tools such as legislative history. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018) (citing *State v. Velasquez*, 176 Wn.2d 333, 336, 292 P.3d 92 (2013)).

The contested clause in RCW 82.04.4311 establishes a deduction for "compensation for health care services covered under . . . medical assistance, children's health, or other program under chapter 74.09 RCW." PeaceHealth argues that we should apply the last antecedent rule when interpreting this provision. The "last antecedent rule" states that qualifying words or phrases modify only those words or phrases that immediately precede them. BLACK'S LAW DICTIONARY 1598-99 (11th ed. 2019). As applied here, the phrase "under chapter 74.09 RCW" would modify only the immediately preceding phrase "other program" and would not be read to modify "medical assistance" or "children's health." Consequently, under this reading, compensation that qualifying hospitals receive from *any* state's CHIP or Medicaid programs would theoretically qualify for the statutory deduction.

Conversely, citing "the overall structure of Washington's subsidized health programs within chapter 74.09 RCW," the Court of Appeals applied the series-qualifier rule. *PeaceHealth*, 9 Wn. App. 2d at 780. This rule provides that "when there is a straightforward, parallel construction that involves all nouns or verbs in a

6

series, a prepositive or postpositive modifier normally applies to the entire series." BLACK'S LAW DICTIONARY, *supra*, 1642. Applied here, the contested clause is understood to read "medical assistance [program under chapter 74.09 RCW], children's health [program under chapter 74.09 RCW], or other program under chapter 74.09 RCW." RCW 82.04.4311. Accordingly, under this reading, RCW 82.04.4311's deduction excludes compensation hospitals receive from other states' CHIP or Medicaid programs.

Analyzing both the context of the contested clause and the broader statutory scheme of RCW 82.04.4311 as a whole, we hold that the Court of Appeals properly applied the series-qualifier rule. *See Lockhart v. United States*, ___ U.S. ___, 136 S. Ct. 958, 963, 194 L. Ed. 2d 48 (2016) (analyzing both the context of the provision and the broader statutory scheme). Washington's CHIP and Medicaid programs are both "program[s] under chapter 74.09 RCW"—Washington's Medicaid program is established under RCW 74.09.500 and CHIP is established under RCW 74.09.470(1). Furthermore, as the remaining phrase "other program" indicates, chapter 74.09 RCW also establishes a number of "other" Washington-State-funded health care programs. *See*, *e.g.*, RCW 74.09.035(1) (authorizing medical care services to persons eligible for the aged, blind, or disabled assistance program authorized under RCW 74.62.030, or eligible for essential needs and housing support under RCW 74.04.805), .800 (establishing the maternity care access program). Thus, within the context of the

contested clause, the modifier "program under chapter 74.09 RCW" makes sense when it is uniformly applied to all of the items in the series: medical assistance (Medicaid), children's health (CHIP), and these other programs. *See Paroline v. United States*, 572 U.S. 434, 447, 134 S. Ct. 1710, 188 L. Ed. 2d 714 (2014) ("'When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.'" (quoting *Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348, 40 S. Ct. 516, 64 L. Ed. 944 (1920))).

Likewise, our analysis of the structure of the statute in which this contested provision is located further supports our applying the series-qualifier rule. Semicolons divide RCW 82.04.4311 into three categories: (1) the Medicare program "under Title XVIII of the federal social security act;" (2) medical assistance, children's health, or other program "under chapter 74.09 RCW;" and (3) Washington's basic health plan "under chapter 70.47 RCW." As the department argues, and as the Court of Appeals correctly held, these parallel statutory references to "under Title XVIII," "under chapter 70.47 RCW," and "under chapter 74.09 RCW" show that the overall structure of the statute supports the application of the series-qualifier rule in this instance. Analyzing RCW 82.04.4311 as a whole—three parallel provisions, each referencing the law authorizing the identified programs therein—the contested provision is subject to only one reasonable interpretation.

8

PeaceHealth cites to the United States Supreme Court's decision in *Lockhart* to argue that the Court of Appeals erred by not first applying the last antecedent rule "and showing that it did not work" before resorting to applying the series-qualifier rule. Appellants' Suppl. Br. at 15. But, contrary to PeaceHealth's argument, we need not always first attempt to apply the last antecedent rule, abandoning it only when the rule's application "produces a nonsensical result." *Id.* Even the fact that a statute makes grammatical sense under the last antecedent rule does not mandate the rule's application. *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993). As the Court in *Lockhart* reasoned, and as the Court of Appeals below recognized, "the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" 136 S. Ct. at 963 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003)).

PeaceHealth, as the taxpayer, bears the burden of showing that it is entitled to the deduction sought, and applying the series-qualifier rule is in keeping with our responsibility to strictly but fairly construe the availability of the statutory benefit against the taxpayer. *See Group Health Coop.*, 72 Wn.2d at 429. As shown here, our analysis of both the context of the contested provision and the broader statutory scheme as a whole in which this provision is located show that the Court of Appeals correctly applied the series-qualifier rule when interpreting the scope of RCW

82.04.4311's deduction, which excludes compensation qualifying hospitals receive

from other states' CHIP and Medicaid programs.[3]

2. *RCW 82.04.4311's Limited Deduction Is Constitutional under the Government Function Exemption to the Dormant Commerce Clause*

The Commerce Clause grants Congress the power to "regulate commerce . . .

among the several states." U.S. CONST., art. I, § 8, cl. 3. The negative implication of

this constitutional grant of power to Congress, the dormant Commerce Clause,

"significantly limits the ability of States and localities to regulate or otherwise burden

the flow of interstate commerce." *Maine v. Taylor,* 477 U.S. 131, 151, 106 S. Ct.

2440, 91 L. Ed. 2d 110 (1986). The dormant Commerce Clause was born out of a

concern of "'economic protectionism—that is, regulatory measures designed to

benefit in-state economic interests by burdening out-of-state competitors.'"

*McBurney v. Young*, 569 U.S. 221, 235, 133 S. Ct. 1709, 185 L. Ed. 2d 758 (2013)

(quoting *New Energy Co. of Ind. v. Limbach,* 486 U.S. 269, 273-74, 108 S. Ct. 1803,

---

[3] PeaceHealth and amici rely heavily on select language in the legislative findings to argue that RCW 82.04.4311 should be read broadly to apply to compensation received from all states' CHIP and Medicaid programs, not just Washington's, relying on legislative findings in LAWS OF 2002, ch. 314, § 1. But when a statute's plain language is unambiguous, our inquiry into the statute's meaning ends. *Spokane County*, 192 Wn.2d at 458. A statement of legislative intent "does not trump the plain language of the statute," and such statements are not controlling even when the codified intent of the legislature speaks directly to the enacted statute. *State v. Reis*, 183 Wn.2d 197, 212, 351 P.3d 127 (2015) (quoting *Kilian v. Atkinson,* 147 Wn.2d 16, 23, 50 P.3d 638 (2002) (plurality opinion)). Under RCW 82.04.4311's plain language, "medical assistance, children's health, or other program" unambiguously form a single category of programs all modified by the phrase "under chapter 74.09 RCW," which limits the deduction to compensation received from Washington, not other states.

100 L. Ed. 2d 302 (1988)).  Accordingly, "the dormant Commerce Clause precludes States from 'discriminat[ing] between transactions on the basis of some interstate element.'"  *Comptroller of Treasury v. Wynne*, 575 U.S. 542, 549, 135 S. Ct. 1787, 191 L. Ed. 2d 813 (2015) (alteration in original) (quoting *Bos. Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 332 n.12, 97 S. Ct. 599, 50 L. Ed. 2d 514 (1977)).  This means that, barring some exception, a state "'may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.'"  *Id.* (quoting *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S. Ct. 2620, 81 L. Ed. 2d 540 (1984)).  "That the tax discrimination comes in the form of a deprivation of a generally available tax benefit" is of no consequence, nor does it matter if the discriminatory burden is only indirectly imposed on the out-of-state customer by means of a tax on the entity transacting business.  *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 578, 580, 117 S. Ct. 1590, 137 L. Ed. 2d 852 (1997).

However, despite these general prohibitions, an exemption to the dormant Commerce Clause exists for when the government is performing a traditional government function.  *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 343, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007).

We hold that RCW 82.04.4311 is constitutional under the government function exemption to the dormant Commerce Clause.[4]  The United States Supreme Court first applied the government function exemption in 2007 in *United Haulers*, and the present case marks the first time that we have been asked to apply this relatively new principle of Commerce Clause jurisprudence.  The government function exemption is premised on the Court's understanding that laws that discriminate in favor of local government may be directed toward any number of legitimate goals unrelated to the general protectionism that the Commerce Clause forbids.  *Id.*  Thus, under this exemption, laws that (1) benefit the exercise of a government function while (2) treating all other private entities the same are constitutional under the Commerce Clause.  *Id.*

In *United Haulers*, the Court upheld a series of New York county ordinances that required trash haulers to deliver waste to state-owned and operated waste processing facilities.  *Id.* at 334.  The Court held that the challenged flow-control ordinances were constitutional because they favored a clearly public enterprise—government-operated waste processing—while treating all other private economic interests the same.  *Id.* at 342.  As the Court explained, "'any notion of discrimination

---

[4]  Because we find the statute constitutional under the government function exemption, we do not address whether the statute would also be constitutional under the market participant exemption, which allows states to discriminate in favor of their own citizens provided the state is acting as a participant in the relevant market rather than a market regulator.  *Reeves, Inc. v. Stake*, 447 U.S. 429, 437, 100 S. Ct. 2271, 65 L. Ed. 2d 244 (1980).

assumes a comparison of substantially similar entities[,]' [b]ut States and municipalities are not private businesses." *Id.* (citation omitted) (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298, 117 S. Ct. 811, 136 L. Ed. 2d 761 (1997)). This is so because "[s]tate and local governments that provide public goods and services on their own, unlike private businesses, are 'vested with the responsibility of protecting the health, safety, and welfare of [their] citizens.'" *Dep't of Revenue v. Davis*, 553 U.S. 328, 340, 128 S. Ct. 1801, 170 L. Ed. 2d 685 (2008) (second alteration in original) (quoting *United Haulers*, 550 U.S. at 342).

In *Davis*, the Court upheld a Kentucky income tax law that exempted from income any interest earned on municipal bonds issued by Kentucky while taxing as income any interest earned on bonds issued by any other state or private party. *Id.* at 331-32. The Court recognized that issuing bonds was a "quintessentially public function" given that the issuance of debt securities allows local governments to pay for public projects. *Id.* at 342. Thus, the Court held the Kentucky law constitutional under the government function exemption because the "tax exemption favors a traditional government function without any differential treatment favoring local entities over substantially similar out-of-state interests." *Id*. at 343.

As the Court in *Davis* explained, the point of our inquiry into whether a challenged statute or regulation supports a government function is "not to draw fine distinctions among governmental functions, but to find out whether the preference [is]

13

for the benefit of a government fulfilling governmental obligations or for the benefit of private interests, favored because they [are] local." *Id.* at 341 n.9. Here, RCW 82.04.4311 is analogous to the laws upheld in *Davis* and *United Haulers* because the deduction supports a quintessentially public function by helping to subsidize the government's provision of essential health care services to Washington's citizens by facilitating the expansion of the government's overall purchasing power for such services.

In response, PeaceHealth argues that because RCW 82.04.4311 does not *directly* regulate the provision of health care subsidies or the rates at which they are set, upholding this indirect relationship between the government function and the challenged regulation would endorse an overexpansive reading of the government function exemption. But PeaceHealth's focus on whether the deduction directly regulates Washington's provision of health care subsidies misconstrues what courts consider when applying the government function exemption—only the market participant exemption asks whether there is a direct relationship between the challenged regulation and the government's actions in the relevant market. *See White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204, 208, 103 S. Ct. 1042, 75 L. Ed. 2d 1 (1983) (holding that, to determine whether the market participant exemption applies, courts must analyze whether the challenged state program constitutes direct

state participation in the market). No similar inquiry appears in the Court's discussions of the government function exemption.

Equally, if not more important to our dormant Commerce Clause analysis, PeaceHealth fails to identify any local private interests that are favored under the statute. Accordingly, we have little by way of either argument or evidence to rebut the conclusion that RCW 82.04.4311 permissibly "favors a traditional government function *without any differential treatment favoring local entities over substantially similar out-of-state interests.*" *See Davis*, 553 U.S. at 343 (emphasis added). To the contrary, PeaceHealth argues only that the challenged deduction *disfavors* both Washington hospitals and Washington citizens. *See, e.g.*, Pet. for Review at 17-18 (arguing that RCW 82.04.4311 increases the cost of health care services generally in Washington).

Our review of *Camps*, on which PeaceHealth relies, helps highlight why RCW 82.04.4311 does not favor local entities over substantially similar out-of-state interests. There, the Court found unconstitutional a Maine statute exempting charities incorporated in the state from real estate and personal property taxes unless the charity was conducted or operated principally for the benefit of out-of-state residents. *Camps*, 520 U.S. at 568. Unlike the B&O deduction here, which is effectively calculated on a patient-by-patient basis, the unconstitutional statute in *Camps* operated in binary fashion, privileging only some in-state charities with a tax deduction while

flat out denying others based on a threshold assessment of each charities' total number of out-of-state clients served. *Id.* at 576 (finding Maine's statute impermissibly discriminatory because the state "singl[ed] out camps that serve[d] mostly in-staters for beneficial tax treatment"). By outright exempting only some charities for differential taxation, the statute in *Camps* plainly treated competing private entities differently. However, the same cannot be said here, where every qualifying public and nonprofit Washington hospital, regardless its location or client population, is subject to the same exclusions on the scope of RCW 82.04.4311's deduction.

In the context of both the design of Medicaid and similar government subsidized health care programs and the regional nature of health care services in general, PeaceHealth is free to question whether RCW 82.04.4311's limited deduction is good policy, but absent evidence of impermissible protectionism, PeaceHealth fails to show what it must for us to find the statute unconstitutional under the dormant Commerce Clause.

## CONCLUSION

Under the series-qualifier rule of statutory construction, RCW 82.04.4311's B&O tax deduction excludes compensation qualifying hospitals receive from other states' CHIP and Medicaid programs. Additionally, because RCW 82.04.4311 benefits a quintessential government function without any differential treatment favoring local private interests over out-of-state interests, we hold that RCW

82.04.4311 is constitutional under the government function exemption of the dormant

Commerce Clause.  Accordingly, we affirm the Court of Appeals' decision.

Owens, J.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

González, J.

Whitener J.